UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| RICHMOND HEALTH FACILITIES - KENWOOD, LP, et al., | ) ) ) | Civil Action No. 5: 14-141-DCR |
| Plaintiffs, | ) ) | |
| V. | ) ) | **MEMORANDUM OPINION** |
| ADRIANNE NICHOLS, as Administratrix of the Estate of Charlie Nichols, Deceased, | ) ) ) | **AND ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On June 22, 2012, Charlie Nichols filed an action in the Madison Circuit Court regarding his care and treatment while a resident at the Kenwood Health & Rehabilitation Center. On October, 28, 2012, Mr. Nichols passed away. Subsequently, Adrianne Nichols was named the administratrix of his estate and an Amended Complaint was filed. [*Id.*] The Amended Complaint alleges claims based on negligence, medical negligence, corporate negligence, violation of a long term care resident's rights, and wrongful death. [Record No. 1-1]

This separate civil action is pending for consideration of Nichols' motion to dismiss. [Record No. 4] For the reasons set forth below, the motion will be denied.

**I.**

The defendants named in the state action include: Fir Lane Terrace Convalescent Center, Inc. d/b/a Kenwood Health and Rehabilitation Complex; Extendicare, Inc.; Extendicare Health Network, Inc.; Extendicare Homes, Inc.; Extendicare REIT; Extendicare, LP; Extendicare

-1-

Holdings, Inc.; Extendicare Health Services, Inc.; Extendicare Health Facility Holdings, Inc.; Richmond Health Facilities — Kenwood, LP d/b/a Kenwood Health and Rehabilitation Center; Richmond Health Facilities — Kenwood G.P., LLC; Preferred Care Partners Management Group, LP; PCPMG, LLC; Preferred Care, Inc. d/b/a Preferred Care of Delaware, Inc.; Kentucky Partners Management Group, LLC; Thomas Scott; Christy King, in her capacity as Administrator of Kenwood Health and Rehabilitation Center; and John Does 1 through 5 Unknown Defendants (collectively, "the state court defendants"). [Record No. 1-1, p. 25] Four of the state court defendants (Richmond Health Facilities — Kenwood, L.P , BLC Preferred Care Partners Management Group, L.P., Preferred Care, Inc., and Kentucky Partners Management Group, LLC) filed this action under the Federal Arbitration Act ("FAA"), seeking to compel arbitration and enjoin Nichols from pursuing her claims against them in state court. The plaintiffs assert that Nichols' claims are subject to a binding alternative dispute resolution agreement contained in Charlie Nichols's residency agreement.

The residency agreement was signed by Charlie Nichols on October 14, 2011, the date of his admission into the nursing home. [Record No. 1, p. 3] The arbitration provision of the agreement states, in relevant part:

> [A]ny and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Center that would constitute a legally cognizable cause of action in a court of law sitting in the Commonwealth of Kentucky and shall include, but not be limited to, all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; fraud; misrepresentation; negligence; gross negligence; malpractice; death or wrongful death; and any alleged departure from any applicable federal, state, or local medical, health care, consumer or

safety standard, Covered Dispute shall include the determination of the scope of
or applicability of this Agreement to mediate/arbitrate.

[*Id.*]

## II.

Nichols argues in the pending motion to dismiss that this Court lacks subject matter jurisdiction. She also asserts that the plaintiffs failed to join an indispensable party and that the arbitration agreement is unenforceable for a variety of reasons. [Record No. 4]

### A. Rule 12(b)(1)

Federal district courts have original jurisdiction over civil actions between citizens of different states if the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). If lack of subject-matter jurisdiction is raised in a motion to dismiss, the plaintiff "bears the burden of proving jurisdiction . . . to survive the motion." *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n*, 287 F.3d 568, 573 (6th Cir. 2002). However, the plaintiff will "survive [a] motion to dismiss by showing 'any arguable basis in law' for the claims set forth in the complaint." *Id.* (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996)).

Motions to dismiss based on Rule 12(b)(1) "generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack "questions merely the sufficiency of the pleading." *Id.* Thus, the Court must accept the "allegations in the complaint as true" when reviewing a facial attack, and "[i]f those allegations establish federal claims, jurisdiction exists." *Id.* A factual attack, on the other hand, is "not a challenge to the sufficiency of the pleading's allegations, but a challenge

to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). When considering a factual attack, there is no presumption of truthfulness applied to the allegations. Instead, the Court "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek*, 491 F.3d at 330.

### B. Rule 12(b)(6)

When examining a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

### C. Subject Matter Jurisdiction

Under the FAA, a district court has jurisdiction over a petition to compel arbitration only if the court would have jurisdiction over "a suit arising out of the controversy between the parties" without the arbitration agreement. 9 U.S.C. § 4. That is, the FAA "'bestow[s] no

federal jurisdiction but rather require[s] an independent jurisdictional basis' [for access to a federal forum] over the parties' dispute." *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (quoting *Hall Street Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008) (internal quotation marks omitted)); *see also Moses. H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983). Section 4 of the FAA "neither expand[s] nor contract[s] federal subject matter jurisdiction. *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 747 n.7 (8th Cir. 1986). Thus, a petitioner proceeding under § 4 must assert an independent source of subject matter jurisdiction. Here, the plaintiffs assert that the Court has diversity jurisdiction pursuant to 18 U.S.C. § 1332. [Record No. 1, p. 3]

Nichols argues that the Court lacks subject matter jurisdiction because complete diversity is lacking. [Record No. 4-1, p. 3] Yet, diversity exists on the face of the federal Complaint. Plaintiff Richmond Health Facilities — Kenwood, LP, is a limited partnership with its principal place of business in Texas and none of its members are Kentucky citizens. [Record No. 1, p. 2] Plaintiff Preferred Care Partners Management Group, LP, is a limited partnership with its principal place of business in Texas and none of its members are Kentucky citizens. [*Id.*] Plaintiff Preferred Care, Inc., is a corporation formed under the laws of Texas with its principal place of business in Texas. [*Id.*] And Plaintiff Kentucky Partners Management Group, LLC, is a Texas limited liability company with its principal place of business in Texas and none of its members are Kentucky citizens. [*Id.*] Conversely, Charlie Nichols' estate is a citizen of the Commonwealth of Kentucky. [*Id.*]

Regarding the amount in controversy, "courts uniformly appl[y] a *limited* 'look through' approach, determining whether the value at stake in the arbitration being sought in the federal action could exceed $75,000, regardless [of] whether the claim(s) to be arbitrated were part of a broader parallel state court action in which the total amount in controversy might be greater." *Northport Health Servs. of Arkansas, LLC v. Rutherford*, 605 F.3d 483, 486-87 (8th Cir. 2010) (emphasis added) (internal quotation marks omitted). Here, the claims that the plaintiffs seek to arbitrate are for actual and punitive damages related to alleged substandard medical care provided to Charlie Nichols while residing at the nursing home. [*See* Record No. 1.] The plaintiffs have adequately shown that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332.

Nichols does not challenge that diversity jurisdiction exists based on the face of the Complaint. Rather, she contends that the Court lacks subject matter jurisdiction because the Court should "look through" to the underlying controversy (which includes non-diverse defendants) and find that diversity jurisdiction is defeated. Nichols also argues that the plaintiffs have failed to join an indispensable party (*i.e.*, the nursing home administrator who was sued as a joint tortfeasor in the state court action) that would otherwise destroy jurisdiction.

### 1. The "Look Through" Approach

Nichols contends that the Court lacks subject matter jurisdiction based on the Supreme Court's decision in *Vaden v. Discover Bank*, 556 U.S. 49 (2009). [Record No. 4-1, pp. 12-17] The plaintiffs counter that *Vaden's* holding is inapplicable to cases premised on diversity jurisdiction. In *Vaden*, a credit card company, Discover, sued a cardholder for past-due charges

in state court. *Id.* at 53. The cardholder asserted state law counterclaims that Discover considered preempted by federal banking law. *Id.* Discover also filed a § 4 petition in federal court to compel the arbitration of the counterclaims. *Id.* at 54. Tracking the language of 18 U.S.C. § 1331, *Vaden* held that a federal court should "look through" a § 4 petition to determine whether it is predicated on a controversy that "arises under" federal law. *Id.* at 66. The *Vaden* Court found that, when looking through to the whole controversy between the parties, the action did not qualify for federal-court adjudication because there was no federal question. As a result, the district court lacked subject matter jurisdiction. *Id.* at 72.

Nichols contends that the Supreme Court's conclusion in *Vaden* "appl[ies] to the analysis of diversity cases as well as [] federal question cases," but she provides no support for this claim. [Record No. 4-1, p. 15] Rather, courts confronting the issue have consistently rejected the "look through" analysis when considering diversity jurisdiction. *See Northport Health Servs. of Arkansas, LLC v. Rutherford*, 605 F.3d 483, 490-91 (8th Cir. 2010). In *Northport*, the Eighth Circuit considered that the Supreme Court "carefully limited its statement of the issues and holding to federal question jurisdiction" and "cited the circuit court cases creating the federal question conflict but did not cite any of the circuit court § 4 diversity cases." *Northport*, 605 F.3d at 490-91. The *Northport* Court was critical of reading *Vaden* in the way Nichols urges, noting that it "distorted the Supreme Court's decision." *Id.* at 488.

This Court is persuaded by the Eighth Circuit's approach in *Northport*. *See Sun Healthcare Group, Inc. v. Dowdy*, No. 5:13-CV-169, 2014 U.S. Dist. LEXIS 24285, *11 (W.D. Ky. Feb. 26, 2014) (following the "well-reasoned" approach of the Eighth Circuit in rejecting

-7-

a similar argument). Further, this and other courts within the circuit have found that *Vaden* is limited to cases involving federal question jurisdiction. *See Brookdale Senior Living v. Teresa Stacy*, No. 5:13-290-KKC, 2014 U.S. Dist. LEXIS 84460 (E.D. Ky. June 20, 2014) (*Vaden* does not apply to a diversity action under the same facts); *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 953 (N.D. Ohio 2009) ("[T]he *Vaden* Court explicitly limited its holding to cases where the controversy underlying the § 4 petition involves federal-question jurisdiction."); *Brookdale Senior Living, Inc. v. Caudill*, No. 5:14-098-DCR, 2014 WL 3420783, at *4 (E.D. Ky. July 10, 2014).

In summary, the Court will not "look through" to the underlying state court action to find that diversity jurisdiction is defeated. The make-up of the parties in the underlying state court action is not relevant in determining whether diversity jurisdiction exists in the present case. The parties presently before the Court are diverse; therefore, this Court has valid subject matter jurisdiction based on diversity.

### 2. Failure to Join an Indispensable Party

Nichols also argues that this Court lacks jurisdiction because Christy King, a nursing home administrator who was named as a defendant in the underlying state court action, is an indispensable party to the current controversy. [Record No. 4-1, p. 17] "As with any federal action, diversity of citizenship is determined by reference to the parties named in the proceeding before the district court, as well as any indispensable parties who must be joined pursuant to Rule 19." *Northport*, 605 F.3d at 486 (quoting *Doctor's Assocs. v. Distajo*, 66 F.3d 438, 445 (2d

Cir. 1995)). Under Rule 19, the Court must first look to whether the individual defendant is a necessary party. *See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001)

> A party is considered necessary if:
>
> (A) in that person's absence, complete relief cannot be accorded among those already parties; or
>
> (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>
> > (i) as a practical matter, impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.

A person's status as a joint tortfeasor does not make that person a necessary. *Id.* at 204. Because the nursing home administrator has been sued in the underlying state-court action, she has an interest in the controversy and her absence from this matter may result in claims left undecided. *See Shields v. Barrow*, 58 U.S. 130, 139 (1854) (a necessary party is one having an interest in the controversy, and whose absence would result in some aspect of the suit being left outstanding). Additionally, if this Court and the state court reached different conclusions concerning the enforceability of the arbitration agreement, the nursing home administrator would face inconsistent procedural remedies. *See GGNSC Louisville Hillcreek, LLC v. Warner*, No. 3:13-CV-752-H, 2013 U.S. Dist. LEXIS 178136, *3 (W.D. Ky. Dec. 18, 2013) (holding that a risk of inconsistent remedies is sufficient to find a party necessary). Thus, the Court will

assume that the nursing home administrator who is not joined in this action is a necessary party.

The nursing home administrator's presence would destroy diversity jurisdiction. Therefore, the question becomes whether she is indispensable for the purposes of Rule 19. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968); *PaineWebber*, 276 F.3d at 200. The factors to consider regarding this issue include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

    (A) protective provisions in the judgment;

    (B) shaping the relief; or

    (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). The Court's focus when weighing these factors is on equity and good conscience. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 852 (2008).

Looking to the first factor, Nichols asserts that she will be prejudiced by having to pursue separate causes of action. [*See* Record No. 4-1, p. 19.] Yet the risk of having to proceed in both a federal and state court is the result of the decision to file suit in state court rather than demand arbitration under the agreement. *PaineWebber*, 276 F.3d at 202; *see also GGNSC Vanceburg, LLC v. Hanley*, No. 13-106-HRW, 2014 U.S. Dist. LEXIS 42355, at *11 (E.D. Ky. Mar. 28,

2014). As the Sixth Circuit has noted, "the possibility of piecemeal litigation is an inevitable consequence of the FAA's policy favoring arbitration." *PaineWebber*, 276 F.3d at 203. Likewise, the potential of this Court reaching a conflicting conclusion when interpreting the arbitration agreement does not present the degree of prejudice necessary to hold the administrative defendant indispensable to this action. *See id.* Rather, this possibility exists because of the decision to name the corporate defendants and administrative defendant in the state court action. *Hanley*, 2014 U.S. Dist. LEXIS 42355, at * 12.

The final factor weighs in Nichols' favor. The plaintiffs could seek to compel arbitration in the state court action. Thus, they have an adequate remedy if the action were dismissed. Yet "the potential existence of another forum does not, in and of itself, outweigh a plaintiff's right to the forum of his or her choice." *PaineWebber*, 276 F.3d at 205. Other courts within this Circuit have found that a nursing home administrator is not an indispensable party by virtue of being a party to the underlying state court action.[1] *Warner*, 2013 U.S. Dist. LEXIS 178136, *3-4; *see also Stacy*, 2014 U.S. Dist. LEXIS 84460, at *16-17. "[E]very circuit to consider the issue[] has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19 in a federal action to compel arbitration." *Northport*, 605 F.3d at 491 (citing *Brown v. Pac. Life Ins. Co.*,

---

[1] Nichols spends a considerable amount of time arguing about the merits of his claims against the nursing home administrator. [Record No. 4-1, pp. 9-11] However, the Court need not address these assertions because that individual is not a party to this action. In addition, Nichols' discussion of *Cytec Industries, Inc. v. Powell*, 630 F. Supp. 2d 580 (N.D.W. Va. 2009), is not persuasive because the Sixth Circuit has spoken clearly regarding Nichols' current arguments.

462 F.3d 384, 393-94 (5th Cir. 2006)); *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83 (4th Cir. 2005); and *PaineWebber*, 276 F.3d at 202-06.

After balancing the factors and considering the Sixth Circuit's rejection of nearly-identical arguments, the Court concludes that the state court administrator is not an indispensable party. Nichols' motion to dismiss will be denied.

### D. Abstention

Nichols also argues that should this Court should abstain from exercising jurisdiction under the doctrine announced in *Colorado River Water Conservation District, et al. v. United States*, 424 U.S. 800, 813 (1976). [Record No. 4-1, p. 22] The factors to consider when deciding whether to abstain under *Colorado River* include:

(1) whether the state court has assumed jurisdiction over any res or property;

(2) whether the federal forum is less convenient to the parties;

(3) avoidance of piecemeal litigation;

(4) the order in which jurisdiction was obtained;

(5) whether the source of governing law is state or federal;

(6) the adequacy of the state court action to protect the federal plaintiff's rights;

(7) the relative progress of the state and federal proceedings; and

(8) the presence or absence of concurrent jurisdiction.

*PaineWebber*, 276 F.3d at 206 (citing *Romine v. Compuserve Corp.*, 160 F.3d 337, 340-41 (6th Cir. 1998)).

The most important consideration is the third factor, which asks "whether there is a clear federal policy evinc[ing] . . . the avoidance of piecemeal adjudication found within the statutory scheme at issue." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (internal quotation marks omitted). The Sixth Circuit has answered this question in the negative: "[i]n the case of the [FAA], there most clearly is not such a policy." *Id.* at 467. This is partially due to the strong federal policy favoring arbitration, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id.* at 468. Indeed, "the desire to avoid litigating a single issue in multiple forums is insufficient to overcome the strong federal policy supporting arbitration." *PaineWebber*, 276 F.3d at 207 (citing *Moses H. Cone Mem. Hosp.*, 460 U.S. at 16). Thus, the most important factor counsels in favor of exercising jurisdiction.

Other factors also counsel against abstention. There is no indication that the state court has assumed jurisdiction over any res or property, nor is there any indication that the federal court is less convenient to the parties than the Kentucky state court. *See Stacy*, 2014 U.S. Dist. LEXIS 84460, at *19 (where the state court has not assumed jurisdiction over property and both courts are geographically convenient, these factors go against abstention). The fifth factor also weighs against abstention. *See PaineWebber*, 276 F.3d at 208-09 (where the FAA is the basis of interpreting the disputed arbitration agreement this factor weighs in favor of exercising jurisdiction).

On the other hand, factors four, six, seven, and eight slightly favor abstention. Charlie Nichols filed the state court action on June 22, 2012. However, Nichols amended her complaint

on February 6, 2014, and the plaintiffs in this case filed the action to compel on April 11, 2014. [Record No. 1] Although the state court action was filed first, both matters are still in the pleadings stage. [Record No. 5, p. 15] When "there is no indication that any significant proceedings have taken place in the state court," the importance of priority is diminished. *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 887 (6th Cir. 2002). Additionally, while the sixth factor does weigh in favor of abstention, "'[t]he fact that the state court will protect [the defendants'] rights under the FAA . . . does not provide the exceptional circumstances necessary to justify' abstention." *Id.* at 888 (quoting *PaineWebber*, 276 F.3d at 209 (internal quotations omitted)).

This Court is also mindful that abstention "is the exception, not the rule." *Colorado River Water*, 424 U.S. at 813. "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 16. Again, the most important factor in this case counsels in favor of exercising jurisdiction. And on balance, the other factors do "not provide the 'exceptional' circumstances necessary to justify abandoning the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them.'" *PaineWebber*, 276 F.3d at 209 (quoting *Colorado River Water*, 424 U.S. at 818).

### E. Validity and Enforceability

Nichols also seeks dismissal of the plaintiffs' Complaint under Rule 12(b)(6), alleging that the arbitration agreement is invalid and unenforceable. [Record No. 4-1, p. 26] More

specifically, she claims that the arbitration agreement: (i) does not evidence a transaction involving interstate commerce; (ii) is unenforceable because it is unconscionable; and (iii) is unenforceable because it is void against public policy. The Court considers – but rejects – each of these arguments.

   1. **Interstate Commerce**

The FAA extends to transactions "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity would represent a general practice . . . subject to federal control. *Stacy*, 2014 U.S. Dist. LEXIS 84460, at *38 (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003)). This Court and numerous others have found that similar nursing home residency agreements are contracts "evidencing a transaction involving commerce," under the FAA. *See Caudill*, 2014 WL 3420783, at *9; *see also Stacy*, 2014 U.S. Dist. LEXIS 84460, at *38-39; *Hanley*, 2014 U.S. Dist. LEXIS 42355, at *22-24; *GGNSC Vanceburg, LLC v. Taulbee*, No. 5:13-CV-71-KSF, 2013 U.S. Dist. LEXIS 110878, at *4 (E.D. Ky. Aug. 7, 2013); and *Warner*, 2013 U.S. Dist. LEXIS 178136, at *8.

"The Supreme Court has interpreted the language 'involving commerce' in the FAA as signaling the broadest permissible exercise of Congress' Commerce Clause power." *Dowdy*, 2014 U.S. Dist. LEXIS 24285, at *31. The agreement here "is a component of a larger contract that evidences a transaction involving interstate commerce." *Stacy*, 2014 U.S. Dist. LEXIS 84460, at *39. Interstate commerce is interpreted broadly and healthcare is an economic activity that represents a general practice subject to federal control. *See Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 589 (Ky. 2012) (citing *Alafabco.*, 539 U.S. at 56-57). Accordingly, Nichols'

argument that the arbitration agreement is unenforceable because it does not evidence a transaction involving interstate commerce is without merit.

### 2. Unconscionability

Next, ignoring the fact that the arbitration agreement itself states that any claims concerning the applicability of the agreement are themselves subject to arbitration, Nichols attacks the arbitration agreement on grounds of unconscionability. [Record No. 4-1, pp. 28-30] This argument has been "squarely rejected" by numerous courts. *Stacy*, 2014 U.S. Dist. LEXIS 84460, at *26. The unconscionability doctrine "is directed against one-sided, oppressive and unfairly surprising contracts, and *not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain.*" *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001) (emphasis added). Moreover, the fact that an arbitration agreement may be a "boiler-plate, pre-printed document" does not render it unconscionable. *Id.* at 342-43 (noting that the fact that an arbitration clause appeared single spaced on the back of preprinted form does not render it procedurally unconscionable).

Nichols' argument regarding the unconscionability of the agreement seem to attack arbitration itself. Yet, this argument ignores the "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 595 (6th Cir. 1995). Nichols' argument is directly contradictory to the policy embodied in the FAA. Further, the agreement possess several characteristics that support its conscionability. The agreement in this case is on a separate sheet of paper, titled in bold print, and given as part of the admissions packet. [Record No. 1-2]

Further, the agreement states in bold, underlined print that signing it is not a condition of admission. [*Id.*] There is not any limitation on any causes of action and the agreement does not limit the right to recovery. Additionally, the terms are such that a person of ordinary experience and education is likely to understand them. There is nothing to suggest that the agreement is "one-sided, oppressive and unfairly surprising." *Conseco*, 47 S.W.3d at 341.

### 3. Public Policy

Nichols also argues that the arbitration agreement is against the public policy of Kentucky. More specifically, she contends that the arbitration agreement is unenforceable because the contract violates her rights under the Kentucky Residents' Rights Statute [Record No. 4-1, p. 31 (citing K.R.S. § 216.515)] The FAA "requires courts to enforce the bargain of the parties to arbitrate." *See Marmet Health Care Center, Inc. v. Brown*, 132 S. Ct. 1201, 1204 (2012). Additionally, it is well-established that there exists "an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011).

The Supreme Court has recently rejected an argument that arbitration agreements in the nursing home context can be voided for public policy reasons under the FAA. *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203-04 (2012) ( "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."). Therefore, any public policy preventing the arbitration of claims against nursing homes or precluding persons with the power to contract from entering into an arbitration agreement would be preempted by the FAA. Nichols arguments concerning the

validity and enforceability of the arbitration agreement are contrary to established law. Dismissal of this action is not required under Rule 12(b)(6).

### III.

For the foregoing reasons and analysis, it is hereby

**ORDERED** as follows:

1. Defendant Adrianne Nichols' motion to dismiss [Record No. 4] is **DENIED**.

This 13th day of August, 2014.

