UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

RICHMOND HEALTH FACILITIES - KENWOOD, LP, et al.,

    Plaintiffs,

V.

ADRIANNE NICHOLS, as Administratrix of the Estate of Charlie Nichols,

    Defendant.

Civil Action No. 5: 14-141-DCR

**MEMORANDUM OPINION AND ORDER**

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of Plaintiffs Richmond Health Facilities – Kenwood, LP's, Preferred Care Partners Management Group, LP's, Preferred Care, Inc.'s, and Kentucky Partners Management Group, LLC's motion to compel arbitration. [Record No. 11] For the reasons outlined below, the motion will be granted, in part, and denied, in part.

**I.**

Charlie Nichols was admitted to the Kenwood Nursing & Rehabilitation Center in Richmond, Kentucky, on October 14, 2011. [Record No. 1, p. 3] On June 22, 2012, he filed an action in Madison Circuit Court regarding the care and treatment provided by the Center. The plaintiffs took over operations at the Center approximately one week later

- 1 -

(July 1, 2012). Charlie Nichols passed away on October 28, 2012. Adrianne Nichols was subsequently named administratrix of Nichols estate. [*Id.*, p. 5] On February 6, 2014, an Amended Complaint was filed in the state court action, asserting claims of negligence, medical negligence, corporate negligence, violations of long-term-care resident's rights, and wrongful death. [Record No. 1-1]

The state action included claims against the following defendants: Fir Lane Terrace Convalescent Center, Inc. d/b/a Kenwood Health and Rehabilitation Complex; Extendicare, Inc.; Extendicare Health Network, Inc.; Extendicare Homes, Inc.; Extendicare REIT; Extendicare, LP; Extendicare Holdings, Inc.; Extendicare Health Services, Inc.; Extendicare Health Facility Holdings, Inc.; Richmond Health Facilities — Kenwood, LP d/b/a Kenwood Health and Rehabilitation Center; Richmond Health Facilities — Kenwood GP, LLC; Preferred Care Partners Management Group, L.P.; PCPMG, LLC; Preferred Care, Inc. d/b/a Preferred Care of Delaware, Inc.; Kentucky Partners Management Group, LLC; Thomas Scott; Christy King, in her capacity as Administrator of Kenwood Health & Rehabilitation Center; and John Does 1 through 5 Unknown Defendants (collectively, "the state defendants"). [Record No. 1-1, p. 23–25] On April 11, 2014, four of the state defendants (Richmond Health Facilities — Kenwood, LP, Preferred Care Partners Management Group, L.P., Preferred Care, Inc., and Kentucky Partners Management Group, LLC) filed this action to compel arbitration and enjoin Nichols from pursuing her claims against them in state court under the Federal Arbitration Act ("FAA"). The plaintiffs contend that the claims asserted against them are

- 2 -

subject to a binding alternative dispute resolution agreement contained in Charlie Nichol's residency agreement. [Record No. 1]

Charlie Nichols signed the residency agreement on October 14, 2011, the date of his admission to the nursing home. [Record No. 1, p. 3 ¶ 12] The arbitration provision states, in relevant part, that:

> any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Center that would constitute a legally cognizable cause of action in a court of law sitting in the Commonwealth of Kentucky and shall include, but not be limited to, all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; fraud; misrepresentation; negligence; gross negligence; malpractice; death or wrongful death; and any alleged departure from any applicable federal, state, or local medical, health care, consumer or safety standard. Covered Dispute shall include the determination of the scope of or applicability of this Agreement to mediate/arbitrate.

[Record No. 1-2, p. 2] The agreement further provides that it is binding upon Charlie Nichols and all persons with claims derived through or on behalf of him, including "any personal representative, responsible party, guardian, executor, administrator, legal representative, agent or heir." [*Id.*, p. 1]

On May 14, 2014, Adrianne Nichols filed a motion to dismiss the Complaint, asserting that the action was not appropriate and that the agreement was invalid for a

variety of reasons.[1]  [Record No. 4]  The Court rejected these arguments and denied the motion to dismiss.[2]  [Record No. 7]

## II.

The plaintiffs have moved to compel arbitration under the agreement.  [Record No. 11]  Under the FAA, arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. This section of the FAA "'is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'"  *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 595 (6th Cir. 1995) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  When considering a motion to compel arbitration, the Court considers: (i) whether the parties agreed to arbitrate the claims; (ii) the scope of the arbitration agreement; (iii) whether there are any federal statutory claims that are non-arbitrable; and (iv) whether to stay any proceedings not subject to arbitration.  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

---

[1] Adrianne Nichols asserted that the agreement: (i) did not evidence a transaction involving interstate commerce; (ii) was unconscionable; and (iii) was void against public policy.  [Record No. 4]

[2] In her response to the motion to compel, the defendant seeks discovery regarding execution of the agreement and the plaintiffs' status as successors-in-interest to the nursing home which entered into the agreement with Charlie Nichols.  As grounds, she reasserts all of the arguments from her previously-denied motion to dismiss.  [Record No. 12, p. 3]  However, the Court has already considered these arguments and found that the arbitration agreement is valid and enforceable.  [Record No. 7]  Thus, the Court finds that the discovery request is not warranted.

Although Kentucky law governs the interpretation of the arbitration agreement, the "liberal federal policy favoring arbitration agreements" must be taken into account even when state-law issues are presented. *Moses H. Cone*, 460 U.S. at 24. Any doubts regarding the parties' intentions should be resolved in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

### III.

The arbitration agreement states that "any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Center," are subject to binding arbitration. This includes violations of "a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; fraud; misrepresentation; negligence; gross negligence; malpractice; death or wrongful death and any alleged departure from any applicable federal, state, or local medical, health care, consumer or safety standards." [Record No. 1-2, p. 2] Charlie Nichols signed the agreement upon being admitted to the Center. The defendant argues that, under the holding of *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), the wrongful death claim is not subject to arbitration. [Record No. 12, pp. 3–8] Conversely, the plaintiffs contend that all of the defendant's claims are covered by the agreement and are subject to arbitration. [Record No. 11-1] In the alternative, they assert that the wrongful death claim should be stayed to allow the remaining claims to proceed to arbitration. [Record No. 14, pp. 8–10]

In *Ping*, the Supreme Court of Kentucky concluded that, although a decedent or his agent may bind beneficiaries to arbitration of survival claims under KRS § 411.140, he cannot not bind them to arbitrate a wrongful death claim under KRS § 411.130. 376 S.W.3d at 599. The court first determined that, under Kentucky law, a wrongful death action is independent rather than derivative of the personal injury claim. *Id.* at 597–99. As a result, wrongful death claims are unlike other claims that the deceased could have asserted had he survived. *Id.* at 599 (citing *Moore v. Citizens Bank of Pikeville*, 420 S.W.2d 669, 672 (Ky. 1967)). Kentucky law is clear that wrongful death actions are to be prosecuted by the personal representative of the deceased, and any recovery is for the benefit of the spouse, children, or parents of the deceased. *Id.* at 598; KRS § 411.130(2). This is distinct from survival claims which are brought on behalf of the decedent. *See* KRS § 411.140 ("No right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured . . . [and] may be brought or revived by the personal representative . . . in the same manner as causes of action founded on contract."). The court summarized this point by concluding that,

> [b]ecause under our law the wrongful death claim is not derived through or on behalf of the resident, but accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss, . . . a decedent cannot bind his or her beneficiaries to arbitrate their wrongful death claim.

*Ping*, 376 S.W.3d at 599. The court in *Ping* further concluded that even where an arbitration agreement purports to bind parties "whose claim is derived through or on

behalf of the Resident," it cannot apply to wrongful death beneficiaries because their claims are not derivative or on behalf of the deceased. *Id.*

One purpose of the Kentucky Uniform Arbitration Act, KRS § 417.045 *et seq.*, and the FAA is to "ensure that arbitration agreements are enforced no less rigorously than are other contracts and according to the same standards and principles." *Ping*, 376 S.W.3d at 589 (citing *Allied-Bruce Terminix Cos., Inc. V. Dobson*, 513 U.S. 265, 275 (1995) and *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850 (Ky. 2004)). However, arbitration agreements may not bind parties to submit claims to arbitration which they have not agreed to submit. *AT & T Technologies v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Accordingly, the *Ping* court rejected the idea that "one party merely by referring to someone else in an arbitration clause [can] thereby bind that other person to arbitration as a 'third party beneficiary' of the arbitration agreement." 376 S.W.3d at 600. Doing so would contradict general contract law by allowing one party to bind another to a contract under which they have no substantive rights and receive no direct benefits. *Id.* at 599. Thus, it would infringe upon traditional contract principles to allow a decedent to bind their beneficiaries to arbitration of a wrongful death claim.

The plaintiffs allege that *Ping* is inconsistent with and preempted by the FAA. They contend that "the *Ping* holding effectively nullifies arbitration in the wrongful death context," in a way precluded by the FAA's liberal policy favoring arbitration agreements. [Record No. 14, pp. 3–5] Specifically, the plaintiffs argue that this case is controlled by *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201 (2012), where the United States

Supreme Court determined that a state court ruling finding personal injury and wrongful death claims to be non-arbitrable as against public policy violated the FAA.

"The FAA directs courts to place arbitration agreements on equal footing with other contracts," not to force arbitration upon parties who have not submitted to it. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). The reasoning in *Ping* is grounded upon contract law, stating that,

> as interesting as life might be if we could bind one another to contracts merely by referring to each other in them, [the court] is not persuaded that a non-signatory who receives no substantial benefit under a contract may be bound to the contract's procedural provisions, including arbitration clauses, merely by being referred to in the contract.

376 S.W.3d at 599. The court determined that requiring the decedent's beneficiaries to submit to arbitration of the wrongful death claim would be the equivalent of one party imposing it upon another, violating basic principles of contract law. *Id.* at 600. Thus, the decision in *Ping* does not single out arbitration claims in a manner inconsistent with the FAA. Instead, it clarifies the theory behind which wrongful death claims are litigated under Kentucky law and places wrongful death claims in the arbitration context on equal footing with those arising out of contracts.

Additionally, there is nothing in the *Ping* court's reasoning inhibiting the arbitration of wrongful death claims altogether. Rather, such agreements must be made with the wrongful death beneficiaries because the claim accrues to them and is intended as compensation for their own pecuniary loss. *Id.* The Supreme Court of Kentucky did not single out wrongful death claims in a way that nullifies arbitration in the wrongful

death context as in *Marmet*, but applied substance-neutral contract law consistent with the FAA.

The plaintiffs also assert that *Ping* singles out wrongful death claims in a way that is inconsistent with well-settled Kentucky law. "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938). A federal court deciding a state law claim applies the state law for all substantive issues and federal law for procedural issues. *Id.* at 82. Here, the scope of state contract law is clearly substantive and requires the application of Kentucky law.

The *Ping* court began its inquiry into the nature of wrongful death actions by looking to the Kentucky Constitution and Kentucky statutory law. It acknowledged that the Kentucky Constitution provides the Kentucky General Assembly with the ability to provide how and to whom recovery belongs. KY. CONST. § 241. Pursuant to that authority, KRS § 411.130 was passed, stating that the personal representative of the deceased shall bring a wrongful death action and it shall be for the benefit of the spouse, children, or parents of the deceased. Additionally, under KRS § 411.133, the General Assembly clearly indicated that wrongful death and personal injury actions may be brought in the same litigation. Finally, the court cited *Moore v. Citizens Bank of Pikeville*, 420 S.W.2d 669 (Ky. 1967), for the proposition that a "wrongful death action is not derivative . . . [but] is distinct from any that the deceased may have had if he had survived." *Id.* at 672.

The plaintiffs argue that negligence claims are subject to contractual release of liability under Kentucky law. [Record No. 14, p. 5]; *See Cobb v. Gulf Refining Co.*, 145 S.W.2d 96 (Ky. 1940); *Greenwich Ins. Co. v. Louisville & N.R. Co.*, 66 S.W. 411 (1902). Thus, they assert that wrongful death claims subject to an arbitration agreement must be treated in the same manner. They cite *Estate of Peters v. U.S. Cycling Fed'n*, 779 F. Supp. 853, 855 (E.D. Ky. 1991), which relied on such reasoning to conclude that a contractual release of liability of injuries from a defendant's negligence barred a wrongful death beneficiaries' claim based in negligence. Further, they contend that *Ping* requires splitting causes of action based upon one indivisible duty in a way prohibited by Kentucky law. [Record No. 14, p. 5]

However, "the State's highest court is the best authority on its own law." *C.I.R. v. Bosch's Estate*, 387 U.S. 456, 465 (1967). In *Ping*, the Kentucky Supreme Court determined that wrongful death claims are distinct from ordinary negligence claims (under KRS § 411.140) because they are not derivative and accrue separately to the wrongful death beneficiaries as a way to compensate them for their own pecuniary loss. Therefore, previous decisions interpreting claims of ordinary negligence are not controlling in the wrongful death context. Thus, the Court concludes that the wrongful death claim is not subject to arbitration under the agreement entered into by Charlie Nichols.

Finally, the Court must decide whether bifurcation of the claims is appropriate. "As the Supreme Court has recognized, "[t]he FAA was designed to overrule the

judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (quotations and citations omitted). "The possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 203 (6th Cir. 2001). In fact, the FAA "requires piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone*, 460 U.S. at 20. Further, it "requires district courts to compel arbitration . . . when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l., Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (quotations omitted).

Here, both parties acknowledge the FAA's preference for arbitration and contend that bifurcation is justified under the Court's decision. [Record No. 12, p. 8; Record No. 14, pp. 8–10] The Court agrees. Thus, it is necessary to divide the claims for resolution. Under the proffered arbitration agreement, the wrongful death claim is not subject to arbitration as explained above. However, the defendant's remaining claims for negligence, medical negligence, corporate negligence, and violations of long-term-care residents' rights are compelled to arbitration. Accordingly, it is hereby

**ORDERED** as follows:

- 11 -

1. Plaintiffs Richmond Health Facilities – Kenwood, LP; Preferred Care Partners Management Group, LP; Preferred Care, Inc.; and Kentucky Partners Management Group, LLC's motion to compel arbitration [Record No. 11] is **GRANTED**, in part, and **DENIED**, in part.

2. The pending action is **STAYED** and arbitration is **COMPELLED** regarding all claims except the claim for wrongful death.

This 19th day of December, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge